UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

25-432

DONALD PARKELL, and the individuals housed within any Delaware prison as inmates or detainees, male and female,

                plaintiffs,

vs.

GLOBAL TEL LINK and STAN TAYLOR,
                defendants.

* * * * * * * * * * * * * * * * * *

Civ. A. No. _____
Jury Trial Demanded
Judge _____

March 30TH, 2025

FILED
APR 0 7 2025
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

CIVIL COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983 AS A CLASS OF PLAINTIFFS WHO ARE SIMILARLY SITUATED

BACKGROUND:

1. This Action arises as a result of the typical tyrannical behavior permeated within the Del. DOC. It is a cultural tyranny, one not lightly addressed.

2. Historically, Delaware has only shouldered the weight of exposure during extreme reactions, unfortunately.

WiFi
Prices too high
per min / outdated
plan is better?

FILED
APR 07 2025
U.S. DISTRICT COURT
DISTRICT OF DELAWARE



3. The DOC has turned a blind eye to the oppressive nature of for profit vendors that are spearheading the provision of services to the men and women held in Delaware's cages.

4. Their acquiescence encourages abuse, notably in the most delicate and fragile arenas, such as medical, mental health and communication/media.

5. In recent years, the networking connectivity of society has broken through the granite shell of Del.'s prison system, seeing a for-profit multi-media vendor insinuate itself with a surprisingly warm welcome.

6. GLOBAL TEL LINK as a vendor provides a wide variety of services to the plaintiffs. This is their duty under contract with Delaware.

7. GTL charges a small fee in exchange for services that are normally free to the public at large. As is usual, inmates, detainees and their families are exploited in this dynamic, as Delaware has never shown any concern for these often abused minorities.

8. Services are easily listed in discovery.

9. Unscrupulous companies awarded highly prized contracts that essentially monopolizes communications between the incarcerated and the people who care for them would not balk at the opportunity to create thieving glitches, or to simply fail to address the glitches when discovered.

10. In a typical .03¢/minute movie selection, simply signing on to merely look at titles available costs .03¢ per minute, without ever actually watching the movie.

11. The choice of movie gets made, and oftentimes triggers a disconnect in the network, starting the tablet over, the menu, the movie, etc. This occurs excessive amounts throughout the movie, costing double the price advertised, and sometimes even three or four times as much.

12. A typical rental through Amazon Prime would ~~cost~~ cost $3.99 for a 3 day rental digitally. That movie could then be viewed non-stop or broken up, or even more than just once during the 3 days time allotted.

13. GTL on the other hand, chooses to rent out time usage. This usage charge applies to the time spent on the tablet. Every incidental dropped signal, broadband interruption or even when the headphone plug is slightly bumped the charge is .03 or .05 ¢. There is no challenge to these charges, and there are no options available to dispute the network disconnections. (Para. 11).

14. This glitchy service results in a Daily Windfall for GTL. For example, should a plaintiff choose to watch a movie on the tablet from the cheapest available section side (.03¢/minute), and that chosen movie is advertised at 2 hours exactly, that you'd reasonably be expected to follow the basic mathematical formula of 120 minutes multiplied by .03 for $3.60 for the price to watch the movie once.

15. The practice for GTL is to stock movie selections on the cheapest side in limited quantity. GTL is fully aware of the dropping network, and they also are aware of how easily fixed the dropping would be. However, fixing the drops is not in the best interests of the exploitative.

16. It is reasonably expected on the terrible network being utilized, that the 2 hour movie we chose (@ 3.⁵⁰) would cost easily around $5.⁰⁰ to $6.⁰⁰.

17. As a measure to calculate the daily windfall GTL is reaping, plaintiffs use this formula ($1/movie × 2 movies/day × 1000/people = $2000.⁰⁰/day)

18. Delaware houses approximately six thousand men and women in it's level five institutions, with a GTL tablet allocated for each individual for use throughout their detention/incarceration.

19. The GTL tablet is the only way one can send text messages, and likewise the only means for many necessary actions.

20. As a layperson, plaintiff can easily point out solutions, which is an indicator of a condition's reasonableness under 'Turner' standards. (Weak or dropping signals are addressed with mesh extenders).

21. Delaware's DOC has had a culturally deplorable infection for many decades.

his culture was one of the leading reasons that a prison uprising occurred in February 2017. Nothing can be as contagious as a poisonous culture. Compounded with an indifferent acquiescence; third party-for profit vendors steer into the prison industry in Delaware and suckle at the teat of an unconstitutional bitch.

22. This is a culture that permitted a Mental Health Vendor to actively sabotage the patients entrusted to their care's safety. "Connections" the 3rd party vendor was found guilty of this, by a jury, and forced into bankruptcy.

23. Now, the demon spawn of Delaware's cultural monster is blatantly stealing micro amounts of .03¢ to .05¢ from the plaintiffs, because Delaware's DOC has no interest in safeguarding its incarcerated in any way commiserate with constitutional behavior.

24. Micro theft is noticeable to the class representative because he has familiarized himself with the practice through lengthy litigations along Delaware's Dept. of Corrections and himself. Addressing these most overlooked behaviors is the motivating

factors in his intentional incarceration. In order to fully bring to light certain abuses, plaintiff rejected a recommendation that would have seen him released from prison already, for a more punitive sentence in order to litigate these issues and hopefully protect the peers he has found to be without protection.

25. The plaintiff happily trades his liberty to be in Delaware's prison system, in order to find and bring focus on these abuses.

26. In a system where the formula in paragraph 17 generates $2000/day, one year of unchecked theft would generate $730 thousand dollars, a lot of money for a couple pennies of "accidental" network drops, or wifi "failures".

27. Motivating the theft is also quite easy to find as a layperson, and such motive is found when considering the small number of movie choices or .03 promotional side option menu.

28. Considering deceit, GTL would conceivably be motivated to not act in the face of deficiencies in the network. This is due to the vast amount of idle time through

each day. This idle-time is absolute, giving incentive to seek multi-media options and fill the day. In a pseudo-societal arena in where the total number of movies available is easily consumed, shrewd and money focused vendors like GTL would over look any flaw because the limited movie titles can be exhausted relatively quickly. To squeeze as much out of the plaintiffs, not fixing the poor network is par for the course.

29. Fixing the obviously intentional "flaws" would erase approximately $700K in annual revenue, and force GTL to follow market regulations. In other words, GTL would have to rely on quality service instead of petty practices of exploitation and theft, deceit and flat out laziness. They would be forced to innovate for growth rather than encourage stagnation for a growth of tumorous ineptitude.

30. An easily conducted audit will gladly be given to this Court for consideration upon jury questions. No defense exists for the defendants, unless the defendants choose honor and engage in meaningful discussions to repair the damage they have done in their attempt

to exploit the families of the class.

## CAUSES OF ACTION/CLAIMS FOR RELIEF

31. The Class of Plaintiffs may be split into subclasses as deemed fit by class Counsel, or by this Honorable Court. Either discretion would serve in the best interests of the Class and be the proper direction of this Action.

32. Plaintiffs are categorized in two distinct ways, 1.) as Pretrial, or presentenced detainees, or 2.) as convicted prisoners.

33. Both of these distinctions can have separate qualifiers to determine subclass divisions. Being through damage quantifiers, usage logistics, and predeterminate disqualifiers. Each of these divisions are reserved for class counsels' informed discretion, or this Honorable Courts'. Class representative has neither the acquity or skill necessary to calculate such.

## DUE PROCESS

34. The Due Process clause protect each plaintiff from arbitrary or unjust punishment either through the Fifth or

Fourteenth Amendments, with Fifth Amendment triggered for sentenced inmates, and Fourteenth Amendment triggered for the individuals not found guilty of any crime, either pre-sentence or pretrial. Each class will determine whether any class plaintiff will be suing under Fifth or Fourteenth amendments for due process claims, according to the decision of the class requirements.

CRUEL AND UNUSUAL PUNISHMENTS

35. Plaintiffs incorporate the Eighth Amendment via each Due Process claim, Fifth or Fourteenth.

RELIEF

36. Plaintiffs requested relief is twofold:

A. award damages commissurate with subclass status (to be determined later, after discovery);
B. Install wifi extenders and provide a strong signal for the network

37. In addition, plaintiffs request that GTL announce issues as they anticipate, and actively work to fix

issues that arise in the future.

38. Award any damages as this Court deems necessary.

Respectfully Submitted,

Donald Pekell

4-1-2025

Class Representative

I declare under penalty of perjury that the foregoing is true and correct.

Donald Pekell

4-1-2025

Class Representative